MOLLIE, FRYBARGER, Appellant, v. LON BOGET et al., Appellees.

**LIBEL AND SLANDER:** Joint Slander. Joint slander cannot exist, in the absence of a conspiracy.

**LIBEL AND SLANDER:** Non-Slanderous Words. Words cannot be slanderous when they do not of themselves detrimentally reflect on the good character of complainant, and when the circumstances attending the uttering justify no inference of bad character.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD, Judge.

OCTOBER 25, 1918.

ACTION for damages for conspiracy to commit slander. There was a directed verdict for the defendant, and the plaintiff appeals.—*Affirmed.*

*Thomas J. Bray,* for appellant.

*Reynolds & Heitsman, McCoy & McCoy,* and *J. W. Carr,* for appellees.

EVANS, J.—I. The petition was in one count. The gravamen of the charge therein was conspiracy to commit slander. It was also alleged therein that, pursuant to the

1. LIBEL AND
   SLANDER:
   joint slan-
   der.

conspiracy, one of the defendants did slander the plaintiff. The one ground relied on for reversal by the appellant is error in sustaining the defendant's motion for a directed verdict. This motion contained eleven grounds. These are not dealt with *seriatim* in appellant's brief. The first ground of such motion was that there was no evidence of a conspiracy. We have read the record carefully, and fail to find therein any evidence of such conspiracy. Without a conspiracy, there could be no joint slander. *Yocum v. Husted,* — Iowa — (December 14, 1918).

II. We are advised in the briefs that the trial court also held that the words proved did not constitute slander. The plaintiff was an unmarried lady, and was the teacher of the village school. If there were any-

2. LIBEL AND
   SLANDER:
   non-slanderous
   words.

thing in the words charged as having been uttered which could be said to reflect upon her good character in any degree, we should be sensitive against putting any obstacle in the way of her vindication. Our reading of the evidence compels us to say, with the trial court, that there was nothing in the words used or in the circumstances under which they were used that could be so regarded.

The record indicates that village gossips regarded one Taylor as a suitor of the plaintiff's. "She was joked about Asbury Taylor, and Asbury was joked about her." Later, the same gossips discovered that John Ford was a rival suitor. One of them testified:

"I heard, a few days before, that Mr. Ford was kind of sweet on the schoolma'am. The only thing I noticed was that he visited with her a time or two, across from my office."

It appears that, on a May morning, a number of the villagers were congregated at the depot, awaiting the arrival of a train for Grinnell. Among the persons so con gregated were the plaintiff and John Ford. Many, if not

all, of the persons so congregated, including the plaintiff and John Ford, boarded the train upon its arrival. The alleged slander had its beginning upon this depot platform.

Leo Davis testified:

"On the morning of May 5th, before that train went north, I was at the station, and saw the defendants Boget, Lunn, and Hasley there. They were standing on the platform at the south end, and they were laughing and talking. I heard Mr. Boget say to his son that it looked like he was going to lose his school teacher. Miss Frybarger was there at the station. Mr. Lunn and Mr. Hasley got on the train, before it pulled out that morning. I did not see them get off. I saw Hasley and Boget in Boget's yard after the 10:00 train came back, and about half-past ten. This was in the north part of town,—in the residence part, there at Mr. Boget's house. Mr. Hasley lived across the tracks, west of town, and about four blocks from Mr. Boget's house. They were standing on the south side of the house, and I was across the street, going home to dinner. Mr. Boget said them folks went west on the train. He was speaking to me. He hollered it across the street to me. * * *"

Cross-examination: "All that I heard them say was with reference to Miss Frybarger and John Ford. They did not mention John Ford's name. Mr. Boget said to his son it looked like he was going to lose his school teacher. His son was attending school, and Miss Frybarger got on the train, and Mr. Ford got on the train. That was all Boget said. I didn't hear Hasley and Lunn say anything. That is all I heard them say. I didn't hear Boget speak to either Lunn or Hasley with reference to anything else, and he did not address them when he said his son was about to lose his teacher. The term of school had not expired at that time. She was still teaching in Searsboro. Miss Frybarger and John Ford were standing in front of the depot when I saw them. They were conversing. They were standing

there in one place when I saw them, and continued to converse together until the train pulled in; and both of them got on the train; and the train went north towards Grinnell."

Ed Davis testified: "Had a conversation with Lon Boget on May 5, 1917, in Searsboro, about half past four in the afternoon, at the crossing between the garage and the telephone office. Mr. Boget and Asbury Taylor were present. I was coming up after my mail, and he and Mr. Taylor were standing on the crossing, and Mr. Boget called me over. After I went over, he told me that Mr. Ford and Miss Frybarger had been to Grinnell to the hotel, and went over to Des Moines together. He said that John had got on the Rock Island around on the south side of the train. Took the south side to get on, instead of getting on at the depot. That he went around on the south side to get on. That was the Rock Island, going west to Des Moines out of Grinnell. I think he said they went together to the Monroe Hotel in Grinnell. * * *"

Cross-examination: "I have lived in Searsboro eight years. The talk I had with Mr. Boget was in the presence of Asbury Taylor. He talked at the same time, and took part in the conversation. I don't remember what I said or what Taylor said. We were all joking about it more or less. We were joking Asbury Taylor. Miss Frybarger has been boarding down at my hotel, and Mr. Taylor has been boarding there. She was joked about Asbury Taylor, and Asbury was joked about her. We all joked together about Asbury losing his sweetheart, the schoolma'am. I talked with you in Searsboro a few days ago and told you that we all joked about it, and that I took it as a joke. At that time, I took it as a joke."

This witness testified also as follows:

"Q. From what Mr. Boget said to you at that time, what did you understand him to mean? A. Well, I would

take it they were going over to Des Moines for some immoral purpose,—something like that."

This latter question and answer of this witness were the only evidence in the record bearing upon the defamatory character of the words used. The circumstance of the utterance by Boget, as testified to by this same witness, was, "We were joking Asbury Taylor * * * about losing his sweetheart." Manifestly, the conduct of these men was trifling, and perhaps silly. Gossip is usually so.

Considering the words used by Boget in their ordinary and usual sense, there was nothing in them which could be construed to impute want of virtue, either, to the plaintiff or to Ford. Putting the same words into the circumstances under which they were uttered, they repel any implication of immorality or unchastity. Giving them full credence, the most that can be said is that they describe the awkward courtship of a would-be-rival suitor. They furnish no basis whatever for the implication of unchastity which the witness Davis claims to have received therefrom. Such implication is contradicted by his own testimony, in its entirety. Other witnesses testified for the plaintiff to substantially the same language under similar circumstances, and none of them perceived any implication against the plaintiff's moral character or reputation. Bowen, one of plaintiff's witnesses, testified as follows:

"Mr. Boget asked me if I had seen John Ford and the scholma'am cutting up down at the depot that morning, and if I saw who was at the depot, and I told him 'No.' I asked who was there, and he said 'Mr. Ford and the schoolma'am;' and I asked what was the matter, and he said they was fooling around, cutting up like a couple of kids; and I said, 'Where did they go?' and he said, 'They went to Grinnell.' He said some other men went up to Grinnell that morning, and that they would kind of keep an eye on them, and just see how they acted there. He did not say

who those other men were, nor how many. Did not say anything about somebody coming back on the train. I understood him to mean that there was simply a friendly relation between them,—nothing unchaste."

We think the trial court correctly ruled that no defamatory words had been said or intended by Boget. No evidence of slander was offered as against the other defendants. The order of the district court is, therefore,—*Affirmed*.

PRESTON, C. J., LADD and SALINGER, JJ., concur.